```
UNITED STATES FOR THE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

REGGIE BROWN,                                    :

                Petitioner,                      :

        -against-                                :    REPORT AND RECOMMENDATION

WILLIAM BROWN,                                   :    08 Civ. 10844 (RJS)(KNF)

                Respondent.                      :
------------------------------------------------------------x
```

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE RICHARD J. SULLIVAN, UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

Before the Court is Reggie Brown's ("Brown") application for a writ of habeas corpus, made pursuant to 28 U.S.C. § 2254, challenging his conviction for third-degree criminal sale of a controlled substance, following a jury trial in New York State Supreme Court, Bronx County. Brown contends his confinement by New York State is unlawful because his appellate counsel provided ineffective assistance to him, by failing to challenge the trial court's denial of his motion to suppress: (1) an undercover officer's identification of him, at the scene of his arrest; and (2) the evidence recovered from him, when he was searched, incident to that arrest.

Respondent opposes the petitioner's application, which is analyzed below.

## II.  BACKGROUND AND PROCEDURAL HISTORY

On November 25, 2003, at approximately 2:40 p.m., Detective Jose Cruz and Sergeant William Crune, and other members of a "field team" were stationed in the vicinity of East 170th Street and College Avenue, Bronx County, to conduct "buy-and-bust operations." A "buy-and-

bust operation" was performed by sending an undercover officer to a location where he or she would attempt to purchase narcotics, and, if successful, the field team would then "arrest whoever it was that sold to the[] [undercover officer]." Detective Cruz was the arresting officer, at the time a radio transmission was received, by Sergeant Clune, from an undercover officer, whose shield number is 7037. Sergeant Clune relayed the substance of the radio transmission he received from the undercover officer to "the field team," which included Detective Cruz. Upon learning the undercover officer had made a "positive buy," and hearing a description of the appearance of the person who sold her narcotics, Detective Cruz stopped Brown, because he matched the description. Later, after the undercover officer identified Brown as the person who had sold drugs to her, Detective Cruz arrested Brown.

Following his arrest, the petitioner was indicted by a grand jury. At a pre-trial Mapp/Gethers[1] hearing, Detective Cruz testified that, on November 25, 2003, at approximately 2:40 p.m., he was on the corner of East 170th Street and College Avenue, when he received a radio transmission from Sergeant Clune indicating a "positive buy" had occurred and providing a description of the narcotics seller. At the hearing, Detective Cruz did not recall the details of the seller's description, but he testified that he saw someone who matched the description he was given over the radio, and that person is Brown. Detective Cruz detained Brown–without touching him physically or using handcuffs–near a police van, so that a "drive-by for identification purposes" could be performed. Thereafter, the undercover officer was driven past

---

[1] A Mapp hearing is held to determine whether physical evidence sought to be used against a criminal defendant was obtained illegally by law enforcement officers and, thus, is inadmissible at the criminal defendant's trial. Mapp v. Ohio, 367 U.S. 643, 81 S. Ct. 1684 (1961). A Gethers hearing is held to determine whether probable cause existed to detain a suspect pending an "on-the-scene confirmatory identification." People v. Gethers, 86 N.Y.2d 159, 161, 630 N.Y.S.2d 281, 282 (1995).

the location where the suspect was being held, in order to determine whether the correct person was detained. After the undercover officer was driven past Detective Cruz and Brown, Detective Cruz received a radio transmission from the undercover officer announcing "'positive ID.'" Detective Cruz testified that "positive ID" meant he had detained "the person involved in the sale."

When Detective Cruz received the "positive ID" radio transmission, he arrested Brown and conducted a search incident to the arrest. Upon searching Brown's person, Detective Cruz recovered, <u>inter alia</u>, twenty-eight dollars, twenty dollars of which was "prerecorded buy money." When Detective Cruz was asked "to take a look around the courtroom" and indicate whether he recognized the person that matched the description he was given over the radio transmission, Detective Cruz identified Brown. Detective Cruz stated that, from the time the undercover officer achieved a "positive buy," to the time the undercover stated that Brown was a "positive ID," only five to ten minutes elapsed.

Sergeant Clune also testified at the hearing. He recalled receiving a radio transmission, at approximately 2:40 p.m., on November 25, 2003, from an undercover officer, informing him that the undercover officer had been successful in purchasing narcotics. Sergeant Clune relayed this information to the "field team." When the undercover officer provided a description of the individual(s) from whom she purchased narcotics, Sergeant Clune also relayed this information to the "field team." According to Sergeant Clune, he received information that there "was a two piece set." He explained that a "two piece set" referred to "two individuals working in concert with each other that had dealings with the undercover." Sergeant Clune explained further that, "[o]ne was tall with a Yankee jacket, gray hooded sweatshirt and blue jeans," and the second

individual "was a shorter male black wi[th] a black jacket, black hooded sweatshirt, also blue jeans." Sergeant Clune directed the field team to look for these two men, and provided the descriptions detailed above.

By a written decision, dated May 13, 2005, the trial court denied Brown's motion to suppress physical evidence and identification testimony. The court determined that: (1) the description relayed from the undercover officer to Sergeant Clune, and then to Detective Cruz, was "sufficiently specific to distinguish the seller from other persons"; (2) Brown's "appearance matched the description in all of these details, and there was thus reasonable suspicion to detain the defendant for the undercover officer's drive-by identification"; (3) after the drive-by identification, the undercover officer confirmed Brown was one of the sellers; and (4) with this confirmation, Detective Cruz had probable cause to arrest Brown and search him incident to that arrest.

At the conclusion of the trial, the jury found Brown guilty for one count of third-degree criminal sale of a controlled substance. On May 24, 2005, Brown was sentenced, as a second-felony offender, to an indeterminate term of four and one-half to nine years imprisonment. Brown appealed, from the judgment of conviction, to the New York State Supreme Court, Appellate Division, First Department, raising the following claims: (1) his trial counsel did not provide effective assistance to him, since counsel failed to (a) move to reopen the pre-trial suppression hearing, after learning that the undercover officer did not transmit "a vital element of the description" that the hearing court relied upon in making its determination, and (b) request an "immediate polling of the jury," after the verdict was announced; and (2) his sentence should be reduced to three and one-half years, based upon section 70.70 of New York State's Drug Law

Reform Act.  In December 2006, the Appellate Division denied Brown's appeal.  See People v. Brown, 35 A.D.3d 322, 827 N.Y.S.2d 45 (App. Div. 1st Dep't 2006).  The Appellate Division found that: (a) the record reveals Brown received effective assistance from his trial counsel; and (b) the request for a reduced sentence was "without merit."  Id. at 323, 827 N.Y.S.2d at 46.  The petitioner applied for leave to appeal to the New York Court of Appeals.  On May 11, 2007, that application was denied.  See People v. Brown, 8 N.Y.3d 982, 838 N.Y.S.2d 485 (2007).

In September 2007, Brown moved, before the New York State Supreme Court, Appellate Division, First Department, for a writ of error coram nobis, claiming his appellate counsel rendered ineffective assistance to him, by failing to challenge the hearing court's denial of the pre-trial suppression motion.

On March 13, 2008, the Appellate Division denied Brown's motion for a writ of error coram nobis.  Brown moved for leave to appeal from this denial, and, on June 24, 2008, the New York Court of Appeals denied Brown's application.  See People v. Brown, 10 N.Y.3d 932, 862 N.Y.S.2d 339 (2008).

The instant application for a writ of habeas corpus followed.

### III. DISCUSSION

To prevail on an ineffective assistance of counsel claim, a petitioner must show that: (1) "counsel's performance was deficient" i.e., falling below an objective standard of reasonableness; and (2) counsel's "deficient performance prejudiced the defense," that is, "counsel's errors were so serious [they deprived] the defendant of a fair trial, a trial whose result is reliable."  See Strickland v. Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064 (1984).  There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance." Id. at 689, 104 S. Ct. at 2065.  The Strickland test applies to claims of ineffective assistance of appellate counsel.  See Smith v. Robbins, 528 U.S. 259, 285, 120 S. Ct. 746, 764 (2000).

"Consistent with the Fourth Amendment, 'the police can stop and briefly detain a person for investigative purposes.'" United States v. Bellamy, 592 F. Supp. 2d 308, 315 (E.D.N.Y. 2009) (quoting United States v. Sokolow, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585 [1989]).  "Such a detention is known as a Terry stop, and requires that 'the officer [have] a reasonable suspicion supported by articulable facts that criminal activity "may be afoot," even if the officer lacks probable cause.'" Id. at 315.  In determining whether reasonable suspicion existed to stop Brown, the Court must determine: (1) when Brown was "seized," within the meaning of the Fourth Amendment, i.e., when "'a reasonable person would have believed that he was not free to leave,'" and (2) "whether, based on the facts known to the officer at the time of seizure, there was some objective justification for stopping the individual that is more than an 'inchoate and unparticularized suspicion or hunch of criminal activity.'" Id. (citations omitted).

The earliest point in time at which Brown might be deemed to have been "seized" by Detective Cruz was when Detective Cruz stopped Brown initially.  Assuming, arguendo, that Brown was, indeed, "seized" within the meaning of the Fourth Amendment at that time, it cannot be said that Detective Cruz lacked reasonable suspicion to stop and detain Brown.  In Gil v. County of Suffolk, 590 F. Supp. 2d 360 (E.D.N.Y. 2008), the court found that a police officer "had a sufficient basis for stopping and detaining [the defendant] based on the dispatcher's broadcast of the perpetrator's general description and [the police officer's] observation of [the defendant's] appearance and conduct in close proximity to, and only minutes after, the alleged

6

[crime]." Gil, 590 F. Supp. 2d at 368. In addition, in Gil, "only minutes after [the defendant] was detained," a show-up identification was conducted to determine whether the person stopped was the perpetrator. Id. Detaining someone for "no more than 17 minutes" from the time the crime was first reported to the time a show-up identification was made, was found to be reasonable and not a violation of the defendant's constitutional rights. Id.

In the present case, Sergeant Clune provided a detailed description of the persons from whom the undercover officer purchased narcotics. Detective Cruz stopped Brown because Brown matched the description of one of the sellers Detective Cruz had been provided. The undercover officer was driven past the location where Brown was stopped, and she confirmed Brown was one of the sellers. Brown was then arrested, approximately five to ten minutes after the narcotics sale occurred. Under these circumstances, Brown's constitutional rights were not violated when he was stopped and detained. At the time he was arrested, Brown matched the description of one of the narcotic sellers, and the undercover officer identified him positively, within minutes of Brown's sale of drugs to her. The Court finds, therefore, that probable cause existed for Detective Cruz to arrest Brown and search Brown's person lawfully, incident to the arrest. Id. (finding that "[a]s for probable cause to arrest, even viewed in a light most favorable to [the defendant], the evidence does not suggest that it was unreasonable for the officers to believe that [the undercover officer] was telling the truth in positively identifying [the defendant] as the [perpetrator]").

Inasmuch as reasonable suspicion to stop and detain Brown and probable cause to arrest him and search him incident to the lawful arrest existed, Brown's appellate counsel was not ineffective for failing to raise, on direct appeal, a claim that the hearing court erred in denying

Brown's pre-trial suppression motion. See Aparicio v. Artuz, 269 F.3d 78, 99 (2d Cir. 2001) ("[t]he failure to include a meritless argument [on appeal] does not fall outside the wide range of professionally competent assistance to which Petitioner was entitled") (internal quotations and citations omitted).

## IV.  RECOMMENDATION

For the reasons set forth above, I recommend that Brown's petition for a writ of habeas corpus, Docket Entry No. 1, be denied.

## V.  FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Richard J. Sullivan, 500 Pearl Street, Room 640, New York, New York, 10007, and to the chambers of the undersigned, 40 Foley Square, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Sullivan. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank


v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 58-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983).

Dated: New York, New York  
      October 19, 2009

Respectfully submitted,

*Kevin Nathaniel Fox*  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE

Copies mailed to:

Reggie Brown  
Andrew Stephen Holland, Esq.